UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAY HOLT FULMER, *et al.* | CIVIL ACTION |
| VERSUS | NO. 17-15943 |
| UNITED STATES OF AMERICA | SECTION M (5) |

**ORDER & REASONS**

Before the Court are a motion *in limine* to exclude the expert testimony of Dr. Maxwell Axler ("Dr. Axler")[1] and a motion for summary judgment[2] filed by defendant the United States of America ("Government"), to which plaintiffs Jay Holt Fulmer and Christina MacDonald ("Plaintiffs") respond in opposition,[3] and in support of which the Government replies.[4] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

**I.    BACKGROUND**

This litigation arises from the death of Catherine Fulmer on March 19, 2015.[5] Over the last years of her life, Catherine Fulmer was treated by a variety of health care practitioners for a number of chronic conditions, including hypertension, morbid obesity, diabetes mellitus, chronic venous stasis and peripheral edema, peripheral neuropathy, chronic back pain, and chronic dyspnea.[6] Relevant here, Catherine Fulmer was treated by Dr. Manual Imseis ("Dr. Imseis"), a primary care doctor, at EXCELth Family Health Center ("EXCELth") in New Orleans, Louisiana, from June 11, 2011, through September 17, 2014. During that time, Catherine Fulmer saw Dr. Imseis 41 times. During the October 6, 2011 visit, Dr. Imseis referred her to a

---

[1] R. Doc. 23.
[2] R. Doc. 24.
[3] R. Doc. 28.
[4] R. Doc. 31.
[5] R. Doc. 1 at 3.
[6] *See* R. Docs. 24-2 at 1; 28 at 2.

gynecologist for a pap smear. During the July 17, 2013 visit, Dr. Imseis ordered a bilateral screening mammogram.[7] There is no record that Catherine Fulmer ever complained to Dr. Imseis about her breasts. There is also no record that Catherine Fulmer ever went for the mammogram,[8] as is consistent with a lack of documentation to show that Catherine Fulmer ever participated in various cancer screenings and mammograms ordered by practitioners she had seen since 2008.[9] In fact, when Catherine Fulmer saw Dr. Mona Shalaby ("Dr. Shalaby") at EXCELth in May of 2008, Dr. Shalaby noted, "Mrs. Fulmer declined any cancer screening, though she understood the risk of not having them," and later in 2009, Dr. Shalaby noted that Catherine Fulmer again "declined pap smear today" and "did not have mammogram or stools for hemoc[c]ult. I discussed it again with her today and discussed the risk of cancers." Although, in 2009, Dr. Shalaby recorded that Catherine Fulmer planned to have cancer screening at University Hospital and Clinic, she declined to have the mammogram in Dr. Shalaby's office, and no records show that she ever had the test as ordered.[10]

Catherine Fulmer also received treatment by Nurse Practitioner Cynthia Bartholomae ("NP Bartholomae") at Access Health Louisiana ("Access Health") in Kenner, Louisiana, for primary care on June 4, 2014, and thereafter at EXCELth on October 22, November 5, 10, and 26, and December 3, 2014, and January 27, 2015.[11] On the October 22 and November 10, 2014 visits, NP Bartholomae ordered a bilateral screening mammogram. Yet, no records show that Catherine Fulmer received a screening or that she complained to NP Bartholomae about the condition of her breasts.[12]

---

[7] *See* R. Docs. 1 at 3; 24-2 at 3; 28 at 2.
[8] *See* R. Docs. 24-2 at 4; 28 at 2.
[9] *See* R. Docs. 24-2 at 1-3; 28 at 2.
[10] *See* R. Docs. 24-2 at 2; 28 at 2.
[11] *See* R. Docs. 1 at 3; 24-2 at 4; 28 at 2.
[12] *See* R. Docs. 24-2 at 4; 28 at 2.

On December 26, 2014, Catherine Fulmer was admitted to the St. Bernard Parish Hospital emergency room for shortness of breath and coughing. The emergency room physician noted a "large white area to the outer aspect of the right breast," which was later identified as invasive ductal carcinoma.[13] Catherine Fulmer died at her home on March 19, 2015. The certificate of death does not identify the cause of death; the manner of death is noted as "pending investigation."[14] Nonetheless, autopsy results that indicate Catherine Fulmer died of "invasive, poorly to moderately differentiated ductal carcinoma of the right breast with metastases to right axillary lymph nodes, left breast, periaortic lymph nodes, neck lymph nodes, mesentery, liver and right lung."[15] Catherine Fulmer's widow, Jay Holt Fulmer, and daughter, Christina MacDonald, seek survival, wrongful-death, and lost-chance-of-survival damages against Dr. Imseis and NP Bartholomae under the Federal Tort Claims Act ("FTCA") for negligently failing to prevent, diagnose, and treat Catherine Fulmer's breast cancer.[16]

## II. PENDING MOTIONS

The Government first seeks to exclude the testimony of Dr. Axler, Plaintiffs' sole expert.[17] The Government asserts that Dr. Axler, a physician triple-board certified in family medicine, bariatric medicine, and quality assurance,[18] lacks the expertise of an oncologist, which the Government claims is required for an expert to give an opinion of causation in this case – namely, how a delay of cancer screenings and diagnosis caused Catherine Fulmer's death. Even if Dr. Axler were qualified, the Government argues that Dr. Axler's opinions and testimony as to the standard of care, breach of the standard of care, and causation are unreliable because he fails to provide sources or a reliable methodology for his opinions as required by Rule 26(a)(2)(B) of

---

[13] *See* R. Docs. 24-2 at 4-5; 28 at 2.
[14] R. Doc. 23-11.
[15] *See* R. Docs. 1 at 3; 23-12 at 5.
[16] *Id.* at 1, 3-8.
[17] R. Doc. 23.

3

the Federal Rules of Civil Procedure and Rule 702 of the Federal Rules of Evidence.[19] Without an expert, the Government contends that Plaintiffs cannot sustain their burden under Louisiana medical malpractice law, making summary judgment in favor of the Government appropriate.[20]

Plaintiffs argue that Dr. Axler's testimony on causation should not be excluded because "[i]t doesn't take an oncologist or even a physician to conclude that failure to conduct breast exams for seven years" caused the delay in Catherine Fulmer's diagnosis and ultimate death. Alternatively, Plaintiffs urge that Dr. Axler is qualified because of his experience in treating cancer patients and developing drugs for breast cancer, which he recites in a declaration submitted for the first time with Plaintiffs' opposition to this motion.[21] For instance, Dr. Axler treated cancer patients (including breast cancer patients) as the senior physician at the SRB Cancer Clinic and Research Institute in Houston, Texas, from 2001 to 2004. Dr. Axler also founded BioPharma Research Associates, LLC ("BioPharma"), a private consulting practice dedicated to clinical research trials in Houston, Texas. In addition to being medical director at BioPharma from 2002 to 2018, Dr. Axler acted as principal investigator there in several breast cancer trials concerning a new drug for breast cancer patients. That drug has since been approved by the FDA and is in current clinical use in the United States.[22] Plaintiffs further contend that Dr. Axler's report meets the requirements of Rule 26 because the only "facts and data" needed to support his opinions are found in the medical records, which need not be attached to the report. Plaintiffs list "14 different prestigious medical and cancer associations and societies" in Dr. Axler's declaration to substantiate the bases for his opinions.[23]

---

[18] R. Doc. 24-4 at 1.
[19] R. Doc. 23-1 at 12.
[20] R. Doc. 24.
[21] R. Doc. 28 at 4.
[22] *Id.* (citing R. Doc. 28-1 at 1-2).
[23] *Id.* at 5 (citing R. Doc. 28-1 at 3-4).

In reply, the Government contends that Dr. Axler's declaration cannot be considered by the Court because it constitutes an untimely-filed supplemental expert report. While the curriculum vitae originally submitted to the Government had listed Dr. Axler's experience at the "SRB Clinic," it omitted the word "Cancer," and Dr. Axler's listed position at BioPharma did not indicate cancer-related research.[24] Had the Government known of Dr. Axler's purported expertise in oncology, it says "it may have consulted its own oncologist or other expert in cancer care or treatment."[25] The Government accordingly urges the Court to exclude the declaration under Rule 37(c)(1) of the Federal Rules of Civil Procedure.[26] And, even if the declaration were considered, the Government says it fails to properly supplement Dr. Axler's bases and reasons for his opinions because it merely identifies a list of institutions rather than methodologies supported by specific documents.[27]

### III. LAW & ANALYSIS

#### A. Rules 26(a)(2)(B) and 37(c)(1)

Rule 26(a)(2)(B) provides that expert witnesses must generally submit an expert report that contains:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and,

---

[24] R. Doc. 23-3 at 3.
[25] R. Doc. 31 at 1-3.
[26] *Id.* at 4-6.
[27] *Id.* at 3.

      (vi)    a statement of the compensation to be paid for the study and testimony in the case.

Under Rule 26(a), expert reports must explain the "how" and "why" of the expert's opinions with specificity. *See Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (report lacked specificity to give advance notice of substance of expert's testimony so was deficient under Rule 26(a)); *Denley*, *v. Hartford Ins. Co. of the Midwest*, 2008 WL 2951926, at *4-5 (E.D. La. July 29, 2008); *Reed v. Binder*, 165 F.R.D. 424, 430 (D.N.J. 1996) (reports referencing "few specific resources" among "massive amounts of documents" insufficient under Rule 26(a)).

Failure to abide by Rule 26(a)'s disclosure requirements prompts sanctions under Rule 37(c). *Honey-Love v. United States*, 664 F. App'x 358, 361-62 (5th Cir. 2016). Rule 37(c)(1) of the Federal Rules of Civil Procedure states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) … the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Further, the scheduling order in this case required that "[w]ritten reports of experts, as defined by Federal Rule[] of Civil Procedure 26(a)(2)(B), who may be witnesses for Plaintiff fully setting forth all matters about which they will testify and the basis therefor shall be obtained and delivered to counsel for Defendant as soon as possible, but in no event later than November 21, 2018."[28] In determining whether a violation of Rule 26 is harmless or substantially justified, a court considers: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Research Found. v. Magna Transp., Inc.,* 338 F.3d 394, 402 (5th Cir. 2003).

Additionally, "[t]he language of Rule 37(c)(1) gives the court broad discretion to fashion a remedy, as the court 'may impose other appropriate sanctions.'" *Reed*, 165 F.R.D. at 431.

Here, Dr. Axler's expert report wholly fails to identify the "basis and reasons" for his opinions as to the standard of care, the breach of that standard, and causation as required by Rule 26(a). Dr. Axler's original report listed no sources to substantiate any of his opinions. While the Government understandably insists that the Court should not even consider Dr. Axler's allegedly belated and prejudicial supplemental declaration, even this declaration fails to conform his report to the standards mandated by Rule 26(a). Dr. Axler's supplemental declaration merely lists a number of institutions as the bases for his opinions; the declaration makes no effort to tie any of his opinions to any particular source or publication of these institutions, much less adequately identify a specific basis or reasons for any of his opinions. Therefore, Dr. Axler's report is conclusory and insufficient under Rule 26(a). These deficiencies are both unexplained by Plaintiffs and prejudicial to the Government, which indicates it would have deposed Dr. Axler and retained an expert oncologist had Plaintiffs provided timely the requisite information concerning Dr. Axler's purported expertise and opinions. Therefore, Dr. Axler's testimony is excluded for failure to comply with Rule 26(a). *See Honey-Love*, 664 F. App'x at 361-62 (affirming exclusion of expert's testimony under Rule 37 where no justification for opinions was offered); *Denley*, 2008 WL 2951926, at *4-5 (excluding report that did not provide justification for opinion under Rule 26(a)).

**B.     *Daubert* Standard**

In addition to arguing deficiency under Rule 26(a), the Government contends that Dr. Axler's expert report should be excluded as unreliable under Rule 702. A district court has

---

[28] R. Doc. 11 at 1-2. The case was later transferred to this section of court but it was ordered that the dates set by the earlier scheduling order were to remain in force. R. Doc. 15.

discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 mandates that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 2018 WL 4932716, at *3 (5th Cir. Oct. 10, 2018) (quotations and citations omitted).

Rule 702 also requires an expert's opinion to be reliable. The reliability inquiry instructs a court to assess whether the reasoning or methodology underlying the expert's testimony is

valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire v. Carmichael*, 526 U.S. 137, 150 (1999). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 508 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors or requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Dr. Axler's curriculum vitae shows over 40 years of experience in family, general, and occupational medicine, including being triple-board certified in family medicine, bariatric

medicine, and quality assurance.[29] Although Dr. Axler is not an oncologist, such expertise is not required for Dr. Axler to provide an expert opinion concerning the standard of care applicable in evaluating the alleged negligence of a family medicine practitioner, which is at issue in this case and which he is qualified to do. *See Broussard v. Andersson*, 921 So. 2d 128, 132 (La. App. 2005) ("Where the alleged acts of negligence raise issues peculiar to the particular specialty involved, then only physicians in that specialty may offer evidence of the applicable standard of care.") (citations omitted).

However, an expertise in oncology or pathology is required for an expert to render an opinion as to the causal connection between the alleged delay in diagnosing Catherine Fulmer's cancer and any resulting harm, death, and lost chance of survival. While Plaintiffs submit that no expertise is required to conclude that a delay in cancer diagnosis causes death from cancer, medical causation in this case is far from "obvious." *See Pfiffner v. Correa*, 643 So. 2d 1228, 1234 (La. 1994) ("The causal connection between a patient's death and an unreasonable delay vis a vis a neurosurgeon's diagnosis and treatment of a patient in circumstances involving a complex medical condition, however, is simply beyond the province of lay persons to assess."). In *Pfiffner*, the Louisiana supreme court held that "expert testimony is not always necessary for a plaintiff to meet his burden of proof in establishing a medical malpractice claim," recognizing that instances of "obvious negligence … require no expert testimony to demonstrate the physician's fault." *Id.* For instance, "[e]xpert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body." *Id.* at 1233-34 (citing *Hastings v. Baton Rouge Gen. Hosp.*, 498 So. 2d 713, 719 (La. 1986)). Louisiana courts have also considered obvious a physician's "failure to attend to a patient when

---

[29] R. Doc. 23-3 at 1-2.

10

the circumstances demonstrate serious consequences of that failure," in the context of emergency trauma. *Id.* at 1234 (citing *Hastings*, 498 So. 2d at 719-20 (failure to attend stab wounds in emergency room)). Nevertheless, the *Pfiffner* court noted that "in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under LSA-R.S. 9:2794's requirements without medical experts." 643 So. 2d at 1234; *see also Thomas v. United States*, 2005 WL 757268, at *7-8 (E.D. La. Mar. 31, 2005) (discussing *Pfiffner* and Louisiana courts' continued general requirement of "expert testimony in medical malpractice cases when the medical and factual issues are complex"); *Bustamente v. United States*, 2003 WL 22715641, at *3 (E.D. La. Nov. 13, 2003) ("Because of the complexity of most medical malpractice cases, the Louisiana Supreme Court has held that the absence of expert testimony regarding the proper standard of care generally precludes the imposition of liability.").

The undeniably complex realms of oncology and pathology are beyond the purview of lay jurors, and an expert is required to demonstrate causation in this failure-to-diagnose case. *See Lewis v. Tulane Univ. Hosp. & Clinic*, 855 So. 2d 383, 387 (La. App. 2003) (noting that a "failure to diagnose case" requires expert testimony to prove causation); *see also Gonzales v. Ochsner Clinic Found.*, 170 So. 3d 1099, 1103 (La. App. 2015) (delayed cancer diagnosis in medical malpractice claim required expert testimony); *Doyle v. Ramos*, 134 So. 3d 92, 99 (La. App. 2014) (expert in medical oncology testified that progression of cancer at time of late diagnosis indicated that an earlier diagnosis would have required same treatment); *Boudoin v. Nicholson*, 698 So. 2d 469, 473-75 (La. App. 1996) (experts in pathology and oncology required to testify that delay in cancer diagnosis contributed to lost chance of survival); *Savelle v. Heilbrunn*, 552 So. 2d 52, 57-59 (La. App. 1989) (oncology experts' opinions supported finding that delay in cancer diagnosis caused harm). Moreover, Catherine Fulmer's complex medical

11

history further complicates the already difficult issue of causation, including, for example, her own role in failing to follow through with ordered mammograms and cancer screenings. *See Blazevich v. Walker*, 2003 WL 21135715, at *4 (E.D. La. May 14, 2003) (prior medical history of "significant health problems" contributed to the "medical complexity" of the case and necessity for expert medical testimony).

While Dr. Axler's three years of experience caring for cancer patients at the SRB Cancer Clinic and Research Institute and six years of experience in clinical trials to develop a cancer drug suggest Dr. Axler has some modicum of experience in certain cancer treatments, even though he practices in the fields of family, general, and occupational medicine, his experience does not establish the requisite expertise in oncology or pathology to opine that a failure to diagnose Catherine Fulmer's cancer caused her death. *See Gonzales*, 170 So. 3d at 1104 n.2 (while family practitioner could testify that delay in cancer diagnosis generally allowed the disease to progress, he "admitted that he could not speak to the specific threshold applicable to the alleged delay in diagnosing and treating [plaintiff's] cancer and that he 'would defer to a pathologist or oncologist'"); *Boudoin*, 698 So. 2d at 473 (family practitioners testified that they "would defer to cancer specialists to estimate survival rates"). This is especially true in light of Catherine Fulmer's complex medical history.

Regardless, even if Dr. Axler were qualified to address the issue of causation in a cancer case, Dr. Axler's expert report wholly fails to identify a methodology he applied to arrive at his opinions about causation. Without citing any bases, providing any reasons, or accounting for the myriad of factors presented by Catherine Fulmer's medical history, Dr. Axler simply pronounces that "Catherine Fulmer's death was a direct and proximate result of [both Dr. Imseis' and NP

Bartholomae's alleged] breaches in the standard of care."[30] Such conclusory opinions are unreliable for failing to articulate a methodology or reasoned basis that a court, as gatekeeper, is required to assess under Rule 702. *See Matosky v. Manning*, 428 F. App'x 293, 298 (5th Cir. 2011) (excluding expert testimony in medical malpractice action based upon conclusory assertion). Accordingly, because Dr. Axler has not satisfied the requisites of Rule 702 and *Daubert* on the issue of causation, his testimony must be excluded on this additional ground.

### C. The Government's Motion for Summary Judgment

#### 1. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed

---

[30] R. Doc. 23-2 at 3.

when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P.

56(c)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

### 2. Medical Malpractice under Louisiana Law

The FTCA is a limited waiver of the United States government's sovereign immunity. *Coleman v. United States*, 2019 WL 126043, at *9 (5th Cir. Jan. 8, 2019) (quoting 28 U.S.C. § 1346(b)(1)).  Specifically, the FTCA provides a waiver of sovereign immunity for "civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death ***caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment***, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346 (emphasis added).  "[T]he 'law of the place' means law of the State – the source of substantive liability under the FTCA." *Coleman*, 2019 WL 126043, at *9 (quoting *FDIC v. Meyer*, 510 U.S. 471 (1994)).

> Under Louisiana law:
>
> [t]o prevail on a claim for medical malpractice, Louisiana Revised Statute 9:2694 requires a plaintiff to prove: (1) the applicable standard of care; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury.  La. R.S. 9:2794.

*Lucas v. United States*, 2017 WL 1549547, at *4 (E.D. La. May 1, 2017).  Generally, an expert is required to testify on all three elements unless the negligence alleged is obvious.  *See Pfiffner*, 643 So. 2d at 1233-34.

The Government's sole ground for asserting summary judgment is that, without an expert, Plaintiffs cannot sustain their burden of proof.  The Court agrees.  Having granted the Government's motion *in limine* to exclude Plaintiffs' sole expert, Plaintiffs cannot carry their

15

burden to prove the standard of care, breach of the standard of care, and causation in this failure-to-diagnose, medical malpractice case, where expert testimony is required to establish each of these elements of their cause of action. *See, e.g.*, *Honey-Love*, 664 F. App'x at 362-63 (affirming grant of summary judgment dismissing medical malpractice case where plaintiff failed to submit proper expert testimony); *Solis v. United States*, 275 F. App'x 322, 323 (5th Cir. 2008) (same); *Davis v. Bio-Med. Applications of La. LLC*, 335 F. App'x 404, 407 (5th Cir. 2007) (same); *Marion v. Ochsner Clinic*, 281 F.3d 1278 (5th Cir. 2001) (same); *Lucas*, 2017 WL 1549547 (granting summary judgment); *Blazenvich*, 2003 WL 21135715 (same); *Samaha v. Rau*, 977 So. 2d 880 (La. 2008) (affirming grant of summary judgment).

### IV.   CONCLUSION

Accordingly,

IT IS ORDERED that the Government's motion *in limine* to exclude the expert testimony of Dr. Axler (R. Doc. 23) is GRANTED.

IT IS FURTHER ORDERED that the Government's motion for summary judgment (R. Doc. 24) is GRANTED and that all claims of Jay Holt Fulmer and Christina MacDonald are hereby DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 6th day of May, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE